If it may please the Court, Boris Trezon for the appellate in this matter. First of all, I wanted to inquire if anybody on the panel had questions about the briefs. Sure, we will have some, but you're welcome to begin and we can launch in.  This is a peculiar case. It's a carve-out of a very large and fairly well-thought-out argument involving a lot of families, a lot of parties. My clients were not involved in the original fight. They were found liable of having intentionally interfered with a contract that they had no knowledge of, that did not exist at the time the action took place, and that they were sued for significantly after the statute of limitations ran. My clients were not part of the original group of defendants. Their only tolerable claim is that they are related by blood to one of the actors. But your clients submitted a declaration in district court saying that the $300,000 payment to Hudson was for, quote, proper reimbursement for labor. What was that labor? It was the labor that was provided, including by the mother. What kind of labor? What was the labor? I believe it was a clerical labor, Your Honor. There are so much vague assertions. What kind of clerical? Who did what? When? Where? Are there documents? I do not know. I was not part of the original case. But this was an issue in the district court. I assume you looked at the proceedings in the district court, and this was a big issue. The judge asked your client's counsel about this issue. In fact, then the opposing counsel said there are no documents showing that any labor was provided. I assume in preparing for this you looked at this. So standing here today, you don't know if there are any documents about the supposed labor that was provided? I limited myself purely to the record, knowing that the court will also limit itself purely to the record. I did not go back and investigate and ask specifically what was the actual labor that was provided. What I satisfied myself with, for the purpose of motion for summary judgment, in order to reach the conclusion that the court did, it would have had to weigh evidence. Our client said that there was labor provided. That gives it a scintillo of evidence that is necessary to find that it's a good labor that was provided, specifically what days, the amount of time, the hourly rate. I don't think that's really the issue. Well, I mean, I think there's more than we're not asking for details. We're saying who did what. I mean, very basic things, and we have no idea. Let me go to some other transactions. Hudson paid Solomon Yashifar $53,000 in 2012, another $53,000 in 2013, $16,000 in 2014. But Mr. Yashifar testified that he didn't do anything for Hudson. What were those payments for? Hudson is a labor thing. It's a labor provider. It provides essentially temporary labor force, right? Mr. Yashifar provided some sort of a service, and they paid them the money for that service. But he testified he didn't do anything for Hudson. Why is Hudson paying him all this money? Hudson had an obligation of some sort on its books to pay Mr. Yashifar. But he testified his deposition he didn't do anything for Hudson. Why is he mysteriously getting $120,000? My clients were never asked the question of what did Mr. Yashifar provide for you. They said, we paid labor charges. My clients are at a disadvantage. They're not part of the big case. They're not aware of the testimony of somebody else. They weren't part of that deposition. They weren't part of that testimony. They didn't have an opportunity to say, but you forgot about this document created or something like that. They didn't have that opportunity. The only thing they had an opportunity to do is to say, at the time we received $300,000, which is, it's not the payment to Mr. Yashifar or to anybody else. It's the action they're found charged with is, actually, they took no action, absolutely. They simply received $300,000 prior to there being any restriction on them receiving $300,000 without being parties to a subsequent action, without, they're really an innocent separate entity. And, actually, there's three of them. There is Hudson Labor, and then there is Rodney Yashifar and Raymond Yashifar. I mean, all three parties would have had to have had separate actions in order to be found culpable for this. There's no evidence that there were of any scintilla evidence. It's not what happened to the money afterwards. That's not what the lawsuit is about. That's not what this action is about. This action is limited to a single action, wiring of $300,000 that my clients did not wire. They simply, money was wired into their account. What happened with the money is outside the scope of their motion for summary judgment because it's not about what they did with the money. It's the action of sending, well, action of receiving $300,000 that everybody was aware of. Seven days later, there's a letter from counsel that says you did this improperly. The lawsuit is filed four and a half years later. So this letter, did the district court ever address this in the summary judgment order? I don't believe that's addressed in the summary judgment. Because I'm not sure your colleague addressed it in their brief either. I did not see a reference to it. I guess it's possible I missed it. I did not see it. My understanding is the letter is a crucial document because under the Basura case, if there is no agreement, if their document is not signed, there is no agreement. Under the Norgaard versus Upjohn case that we have cited, if the other side has knowledge of the action, they need to move along. And they clearly say, we know you wired $300,000. It is our contention that it's wired outside the permitted parameters, and then four and a half years pass. Well, whether that means you win is a different question, obviously, from whether that creates a disputed issue of fact on the statute of limitations with all inferences drawn in your favor. And that's exactly my point.  Well, where did the money go? How did you spend it? Why was it? But we're in a motion for summary judgment on a discrete single transaction that took place in March of 2012. Not my clients wired money into a corporate account. So I have a corporate client and I have two individuals. Even if the corporate client is in place, there is zero evidence that two individuals have done anything improper. They took no assertive, affirmative, or any direct action in order to undertake this intentional interference. It's like you can't murder a dead person. You can't intentionally interfere with a contract that doesn't exist. The contract doesn't come into existence for more than a month. The defendant is aware of the fact that there is something they're unhappy with, and they wait four and a half months to deal with it. And all in all, to make it even furthermore, there is no allegation of an alter ego liability in the complaint, and yet my clients have found to be individually liable under alter ego theory when one was not pled. The only thing that exists there is a boilerplate language that each defendant is agent and cross-agent in principle for the other. And that's it. In all honesty with that, I have nothing else. Okay. Well, you'll have some time for rebuttal, but let's hear from your opponent. Good morning, Your Honors. Andrew Kim of Kim Riley Law on behalf of appellee Howard Absolette. Pardon me. Appellee believes that the district court got it right. There were no genuine disputes as to any material facts. At bottom, we believe that appellants are questioning the district court's power to draw reasonable inferences from undisputed facts. Why don't you start by addressing the letter that I think it's the same letter. Yeah. The March 29th letter. The Steptoe letter. Yes, correct. That was the letter that was sent when predecessor counsel for appellee learned that various distributions had been made from the class action reserve that was established in the Roosevelt Lofts LLC bankruptcy. Including the $300,000 one that's specifically at issue on this appeal. That's correct. And that letter essentially followed some interaction between predecessor counsel and the Levine Neal firm, which was the distributing agent for the class action reserve, in which there were questions asked, documents presented concerning what happened with respect to these various distributions, including the $300,000 distribution to Hudson. The letter itself, your honors will see, says essentially, you've raised more concerns than you've answered questions with the documents that you've provided. Unless we learn more, we have to proceed and ratchet this up and determine whether there's any problems with these distributions, and we have to figure out what went on. Ultimately, that occurred. And what occurred was in the bankruptcy case, predecessor counsel filed a motion essentially to have the distributions clawed back. There was other relief that was sought. Ultimately, that motion was heard. It was determined. Bankruptcy Judge Mund made several findings that were favorable to appellees, but found that she was not able to order a clawback of those transactions. So, counsel, you know, what you just said maybe would let you win at trial on the statute of limitations, but when we have to, and the trial judge has to make all inferences in favor of the non-moving party. When your client's lawyer sends a letter specifically addressing this specific transaction and saying we have all of these questions about it, and in fact I don't think it takes many inferences to read this letter and infer that your client's lawyer was saying we think this may be fraudulent. Why, with all inferences drawn in favor of the non-moving party, doesn't this at the very least raise a factual dispute about whether the statute should have started running when this letter was written? Because at that point in time, predecessor counsel, appellee, was not aware of the underlying facts that comprised all the elements of the particular ultimate claim that was asserted. And what appellee did was proceed to the bankruptcy court to try to seek relief. But you don't need, as I understand California law, you don't need to be absolutely certain, as I understand it, the statute of limitations in California under the delayed discovery rule is triggered by suspicion. It's triggered, well, the statute of limitations is triggered by accrual, and accrual is when all of the elements of the cause of action have been completed. When you add the discovery exception to the accrual rule, appellee has to have discovered all of those elements and be in a position to then seek relief based on discovering those underlying facts. Doesn't the, in this case, you, the moving party, have to demonstrate that there is no factual question that reasonable investigation would not have revealed a factual basis for the claim? I'm sorry, Your Honor. Don't you have to demonstrate that there is no factual dispute about whether a reasonable investigation at this time would not have revealed a factual basis for the claim? I mean, I just don't understand, reading this letter, how that at the very least doesn't create a factual dispute that bars summary judgment, whether the statute's two or three years. Well, Your Honor, let me then address, if I may, equitable tolling, if that's okay. The filing of the motion in the bankruptcy case, we believe, equitably tolled the running of the statute of limitations. The reason is appellee was seeking a remedy, and it was a remedy related to whether this disbursement was improper, as well as other disbursements, and that process ran its course. As part of that process, one of the things that was discussed in front of the bankruptcy judge and one of the things that the bankruptcy judge indicated we needed to do was to seek essentially what she referred to as a charging order that would put us in a position, appellee in a position where he could acquire the shares of Roosevelt Lofts, Inc., which was the equity owner of the bankrupt debtor Roosevelt Lofts, LLC. And so appellee began that process, and they began that process in December of 2014. How much time between the time you filed that motion and the time it was resolved by the bankruptcy court? So how much time do you get tolled, if we credit your argument here? The bankruptcy motion was filed on July 9, 2013, and it was finally resolved October 1, 2013. So that's the bankruptcy motion. So that's only, that's not that much time. That's about 80 days of tolling. Does that save the, that doesn't save the timeliness. Well, but moving on to the second part of the equitable tolling argument, which has to do with the effort to actually acquire through execution sale the shares of RLI from judgment debtors. So that would put appellee in a position where he had two routes to success here. One was to roll back the distributions, if that could happen. And the other was if the distributions did not get rolled back, any money remaining in the class action reserve would devolve to appellee based on appellee status as the equity owner of RLL. And so that's why we went into court in December of 2014. We got writs of execution. We did an execution. We had a martial levy on the shares. We did an execution sale. Appellee acquired those shares. That process was subject to a motion to vacate the sale brought by several of the Yeshua Farr family members, including Raymond Yeshua Farr, who's one of the, excuse me, appellants at issue here. And ultimately, that went through appeal, and the appellate courts upheld the execution sale. And it was determined, finally determined in February of 2017, that appellee actually owned those shares. Now, this was not a part of the district judge's ruling, correct? Not part of his ruling.  Now, I may be wrong, but do I recall something in here that, with this procedure, that you or your predecessor submitted the order that the judge ultimately adopted? Is that the way this works? The statement of decision, that's correct. And did you put equitable tolling in there? I did not, Your Honor. Well, okay. We did argue it, and the standard today is de novo. I understand. Yeah. Can I ask you to move to the other point, I think, that your opponent raised here, which is just the timing of when the contract actually was formed? Yes. Because it did seem to me that he was right, that the transfer, I think, it occurred sometime in March. Yes. And then the contract that you are alleging was interfered with was not really the signatures of all the people that were required. It didn't happen until April. So how could he? That's correct. I think you asked a good question. How could I be charged with interfering with a contract in March that didn't come into existence until April? The contract by its terms was as of February 10th, which was about a month and two days before the ‑‑ well, actually February, so about 28 days prior to the actual transfer being made. And the district court specifically looked at that and said this is when the contract was effective. Judgment debtors knew that the contract was effective as of that date. But these defendants didn't. They're not parties to it. Well, but the court specifically found an alter ego relationship. And so the knowledge of the appellants is imputed to judgment debtors and vice versa. And the reason that alter ego relationship was found had to do with, among other things, the $300,000 that dropped from the sky and the fact that all the evidence was that there was no basis for this money to be paid. Explain to me the theory that the alter ego analysis goes to Raymond and Rodney for this purpose. I believe that the district court's determination was that ‑‑ well, actually, liability for Rodney and Raymond is based on pospondiat superior. It's not based on these are the individuals. Rodney is ‑‑ one of them is the CEO and the other was the CFO. I confuse which is which, frankly. But in terms of the alter ego analysis, what the court determined was that the Hudson and the individual sons were alter egos of one another. And also that Hudson and the individual sons acted as alter egos of the judgment debtors in connection with these particular ‑‑ with this particular transaction. And so the court, as I understand it, imputed the knowledge of the judgment debtors concerning the contract, based on the long history of these machinations, not just as relevant to this case, but the companion cases that involved Raymond and Rodney Yeshua for also. And so that was the basis on which I believe the court made the determination that the knowledge of the contract that the judgment debtors had could be imputed to Hudson and to Raymond and Rodney Yeshua for. And I think the court also looked at, if I may, looked at the sequence of events and how the transactions took place and determined that Hudson was set up. Five months after the plan was confirmed for purposes of manufacturing these exact transfers at issue. And there is some evidence as to what happened with respect to the money. We asked for all the evidence concerning the backup, any documents related to the services performed, and what we got was a bank statement. And that bank statement reflected that there was a deposit made of $300,000. There was nothing else given concerning any services performed. At the pretrial conference, counsel for appellants indicated that the claim was an assigned claim from somebody else who had rendered services to RLL, the bankrupt debtor, a company named Supreme. There's never been any creditor of RLL named Supreme. That was sort of made up out of whole cloth. And I think taking all that together, the district court determined that there was an alter ego relationship, and that's how the determination was made that the contract was in existence and that appellants knew about it. What evidence is there in the record that the appellants induced the judgment debtors, their father and uncle, to breach the settlement agreement? It seems here the evidence is actually the other way around, that it was perhaps the father and uncle masterminded this, and perhaps the appellants made common sense suggesting they knew about it. But is there any actual evidence in the record showing that the appellants were the ones who induced the judgment debtors to breach the settlement agreement? I would say the evidence is circumstantial, and it's based on, again, the setting up of the company. There seems to be no purpose for the setting up of that company other than to funnel monies from the RLL bankruptcy coffers into the judgment debtors' hands through Hudson. And so I think the court determined, based on that circumstantial evidence among others, that there was interference. We didn't get an admission that there was inducement. I haven't ever in my career. But this seems to us to amount to circumstantial evidence from which the court can clearly draw an inference, and it's undisputed circumstantial evidence. Okay. All right. Thank you very much. Thank you. You have some time for rebuttal, if you'd like to use it. Let me start with the easy part first. On page 24 of our brief, we cite specifically the fact that the circumstantial evidence that's being referred to was disputed in declarations that were filed with motions for summary judgment. Having said that, the letter that Your Honor referred to originally states specifically, if you have an explanation as to why the irrevocable instructions to you as custodian of these funds were not complied with, we're certainly happy to see it. If not, we will have no alternative but to proceed to recover those funds from you both, from both you as custodian and from various recipients as fraudulent conveyances. That letter seems to be pretty straightforward. They believe that there is an issue, there is an action, and they want to take action. The case law on this is Addison v. State of California, which we cite in our brief, and it states, equitable estoppel applies where a party reasonably and in good faith pursues one designed to lessen the extent of his injuries or damage and where there is no prejudice. In this particular case, nothing prevented filing of the motions, the fact that it's in bankruptcy court, nothing prevented the plaintiffs in the action and the police here from separately initiating an action, either in state court or in a diverse proceeding in bankruptcy court. The fact that there are motions pending does not toll the action against my clients. My clients are not part of the bankruptcy estate. They're not brought in. They really, we don't even know if they have notice of these events. What they did is they're charged with a single act of somebody else sending them money. That's it. And as has been pointed out, we are in a motion for summary judgment. All facts are all evidence is viewed in the light most favorable to my clients. And I think the only way the district court could have reached the conclusions it did is if the district court weighed evidence as opposed to giving my clients advice. I think I understand where the district court was coming from. I won't speak for my colleagues, but I will just tell you that it seems to me pretty obvious what was going on here, and I think it favors your opponent, right? I mean, I don't know. My colleague asked you a couple of questions that you had no good answers to. I don't think there are good answers, frankly. So this whole thing stinks. I understand why the district court did what it did, but I don't know. It may be right that as a technical matter, you're, you know, the court couldn't have granted summary judgment in the plaintiff's favor. I get that, but I don't think you should stand here and sort of try to pull the wool over our eyes as though all this was on the up and up because it clearly wasn't. Your Honor, I don't know if I – well, first of all, I was not in the underlying case, so I'm not privy to all the evidence. What I have read seems this is a crisis. Things are happening very fast. Companies are going out of business left and right. I can't fault people for taking actions they need to save their livelihoods, right? I can't fault them for taking actions that are not honest. I don't think this is a question where somebody did something dishonest. I will tell you one thing. I do not think my clients did anything dishonest. I don't know where Espendia Superior comes into this mix because I'm not aware of any employees doing anything. So I'm not quite sure how this – I'm aware it looks bad. I get it. But I would like my clients to have an opportunity to stand before a trier of fact, eight people in the box, and explain to them, folks, this is what happened, this is what we did. And all they ask for is for that chance. If it stinks, as you said it, they will be punished. But if they can explain it and eight people will agree that they had reasons to do it, maybe all of us are seeing it the wrong way. Maybe. Okay. Thank you very much. Thank you very much. The case just argued is submitted, and we are in recess for the day. All rise.
judges: Watford, Bennett, Lee